United States District Court
Southern District of Texas
**ENTERED**
August 09, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HEALTHEON, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-23-1992 |
| | § | |
| CLEAN AIR SOLUTIONS, INC., | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Healtheon, Inc. ("Plaintiff") seeks to compel Clean Air Solutions, Inc. ("Defendant") to participate in arbitration of an alleged breach of contract.[1] Defendant argues that the parties never agreed on a material detail regarding Defendant's scope of work and therefore never formed a valid contract.[2] Defendant seeks

---

[1] Petition to Compel Arbitration Pursuant to Section 4 of the Federal Arbitration Act ("Petition to Compel Arbitration"), Docket Entry No. 1, pp. 1, 11(1). For purposes of identification all page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing system.

[2] Defendant and Cross-Claimant Clean Air Solutions, Inc.'s Crossclaim for Declaratory Relief and Judgment Under 28 U.S.C.A. § 2201 ("Defendant's Crossclaim"), Docket Entry No. 17, p. 4 ("**Nowhere in [Defendant]'s Alternate Bid** . . . did [Defendant] indicate it would be incorporating stainless steel members in either the ceiling grid or the plenum cap, items which were specifically called out as being stainless steel components in [Plaintiff]'s RFQ."); id. at 7-8 ("Consent to contract is not mutual unless there has been a meeting of the minds by the parties on all of the material terms of the contract. . . . As a result, it cannot be said that [the parties] ever entered into a contract for the Project[.]").

declaratory judgment that there is no contract between the parties and therefore no agreement to arbitrate.[3] Pending before the court are Plaintiff's Petition to Compel Arbitration (Docket Entry No. 1); Plaintiff Healtheon, Inc.'s Motion for Summary Judgment ("Plaintiff's MSJ") (Docket Entry No. 28); and Defendant's Crossclaim (Docket Entry No. 17). Although there is some pre-contract evidence that the parties had not agreed to all details in the scope of work, the parties later signed a valid contract that defined the scope of work and explicitly superseded all prior understandings. Because the contract contains an arbitration clause encompassing Plaintiff's breach-of-contract claim, Plaintiff's Petition to Compel Arbitration and Plaintiff's MSJ will be granted, and Defendant's Crossclaim will be denied.

## I. Background

In September of 2021 Plaintiff participated in the bid process for a National Aeronautics and Space Administration ("NASA") construction project known as "Building 31 Astromaterials Research and Curation Annex."[4] Plaintiff invited Defendant to submit a quote for a specialized component of the contract — the construction of a "cleanroom."[5] Plaintiff sent NASA's Request for

---

[3]Id. at 10-11 ¶¶ 1-2.

[4]Plaintiff's MSJ, Docket Entry No. 28, p. 2; Defendant Clean Air Solutions, Inc.'s Opposition to Plaintiff Healtheon, Inc.'s Motion for Summary Judgment ("Defendant's Response"), Docket Entry No. 29, p. 2.

[5]Plaintiff's MSJ, Docket Entry No. 28, p. 2; Defendant's Response, Docket Entry No. 29, p. 2.

Quote ("RFQ") for the project to Defendant, which indicated that the cleanroom would have a two-tiered, rod-welded stainless steel ceiling grid.[6]

Defendant informed Plaintiff that Defendant was "having difficulty matching the [stainless steel] system that has been specified [in the RFQ]" and that it would "need to put in an alternate on the ceiling and plenum cap system being proposed."[7] Defendant explained that it had concerns about its ability to provide the requested stainless steel design and the safety and integrity of such a grid.[8] Defendant submitted an alternate bid proposal for the cleanroom that quoted a price for an aluminum ceiling grid.[9]

After NASA awarded the contract to Plaintiff, Plaintiff and Defendant executed a subcontract.[10]  The Subcontract defined

---

[6]Declaration of Kathie Kalafatis in Support of Defendant Clean Air Solution, Inc.'s Opposition to Plaintiff Healtheon, Inc.'s Motion for Summary Judgment ("Kalafatis Decl."), Exhibit 1 to Defendant's Response, Docket Entry No. 29-1, p. 2 ¶ 4.

[7]September 28, 2021, Correspondence, Exhibit A to Kalafatis Decl., Docket Entry No. 29-1, p. 10; Kalafatis Decl., Exhibit 1 to Defendant's Response, Docket Entry No. 29-1, p. 2 ¶ 4.

[8]Kalafatis Decl., Exhibit 1 to Defendant's Response, Docket Entry No. 29-1, p. 2 ¶ 4.

[9]Id. at 2-3 ¶¶ 6-7; Estimate, Exhibit B to Kalafatis Decl., Docket Entry No. 29-1, p. 21 ("MAIN CLEANROOM GRID SYSTEM: . . . Fabricated from a standard anodized aluminum finish.").

[10]Subcontract #: 2201-002 Project: 2201 JSC Building 31X ARES Annex ("Subcontract"), Exhibit 1 to Petition to Compel Arbitration, Docket Entry No. 1-1, pp. 2, 14; Kalafatis Decl., Exhibit 1 to Defendant's Response, Docket Entry No. 29-1, p. 6 ¶ 18.

Defendant's scope of work according to NASA's specs and did not incorporate Defendant's alternate bid proposal.[11]  The Subcontract states that it "constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral or written agreements, representations, and understandings of the parties."[12]  The Subcontract outlines an alternative dispute resolution process for "[a]ll claims, disputes, and other matters in controversy . . . arising out of, or relating to, the Subcontract[.]"[13]  The Subcontract states that the parties will first resort to negotiation between executives, then non-binding mediation, and lastly binding arbitration before the American Arbitration Association ("AAA").[14]  The Subcontract states that it is governed by Lousiana law.[15]

After the Subcontract was executed, a dispute arose about the cleanroom ceiling grid.[16]  Defendant argued that an aluminum ceiling

---

[11]Subcontract, Exhibit A to Petition to Compel Arbitration, Docket Entry No. 1-1, p. 2 (SCOPE OF WORK); Kalafatis Decl., Exhibit 1 to Defendant's Response, Docket Entry No. 29-1, pp. 6-7 ¶¶ 19-20.

[12]Subcontract, Exhibit A to Petition to Compel Arbitration, Docket Entry No. 1-1, p. 13 ¶ 27(i).

[13]Id. at 11 ¶ 25.1.

[14]Id. at 11-12 ¶¶ 25.2-25.4(i).

[15]Id. at 12 ¶ 27(a).

[16]Plaintiff's MSJ, Docket Entry No. 28, pp. 4-6.

grid was acceptable, but Plaintiff and NASA disagreed.[17] The parties attempted to resolve the dispute informally but were unable to do so, and Defendant allegedly stopped performing.[18] Plaintiff filed a demand for arbitration with the AAA, alleging that Defendant breached the Subcontract.[19] The parties engaged in mediation but were unable to resolve the dispute.[20] Defendant filed a response to Plaintiff's arbitration demand, asserting various defenses including the absence of a binding and enforceable contract.[21] Defendant stopped participating in the arbitration, and Plaintiff filed this action.[22]

Plaintiff seeks an order compelling Defendant to "arbitrate all claims, disputes and defenses asserted in the pending AAA arbitration . . . as well as any other claims or disputes relating to the Subcontract[.]"[23] Defendant responded to the Petition to Compel Arbitration, and Plaintiff replied.[24] Defendant filed its

---

[17]Id. at 5-6.

[18]Id. at 6-7.

[19]Id. at 8; Construction Arbitration Rules Demand for Arbitration ("Arbitration Demand"), Exhibit B to Petition to Compel Arbitration, Docket Entry No. 1-2, p. 12 ¶¶ 39-40.

[20]Plaintiff's MSJ, Docket Entry No. 28, pp. 8-9.

[21]Response to Demand for Arbitration, Exhibit C to Petition to Compel Arbitration, Docket Entry No. 1-3, pp. 8-9 ¶ 14.

[22]Plaintiff's MSJ, Docket Entry No. 28, p. 9.

[23]Petition to Compel Arbitration, Docket Entry No. 1, pp. 11-12 ¶ 1.

[24]Defendant Clean Air Solutions, Inc.'s Opposition to Petition to Compel Arbitration, Docket Entry No. 18; Healtheon Inc.'s Reply
(continued...)

Crossclaim, seeking declaratory judgment "that [Plaintiff] does not have [a] contract with" Defendant and "that [Plaintiff] has no agreement sufficient to enforce an arbitration or ADR provision[.]"[25] After the case was reassigned to the undersigned judge, the parties expressed their desire to resolve the arbitration dispute on cross-motions for summary judgment.[26] The court set a deadline for dispositive motions, Plaintiff filed its MSJ, Defendant filed its Response and MSJ, and Plaintiff replied.[27]

## II. Legal Standards

### A. The Federal Arbitration Act

"A party aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "If no jury trial be demanded by the party alleged to be in default, . . . the court shall hear and determine such issue." Id.

---

[24](...continued)
Memorandum in Further Support of Petition to Compel Arbitration, Docket Entry No. 19.

[25]Defendant's Crossclaim, Docket Entry No. 17, pp. 10-11 ¶¶ 1-2.

[26]Joint Status Report to the Court and Incorporated Motion to Adopt Amended Scheduling Order, Docket Entry No. 26, p. 2.

[27]Order, Docket Entry No. 27; Plaintiff's MSJ, Docket Entry No. 28; Defendant's Response, Docket Entry No. 29; Healtheon Inc.'s Reply Memorandum in Further Support of Its Motion for Summary Judgment, Docket Entry No. 30.

In deciding whether the parties have agreed to arbitrate a dispute, the court asks "'(1) [whether there is] a valid agreement to arbitrate the claims and (2) [whether] the dispute in question fall[s] within the scope of that arbitration agreement[.]'" Klein v. Nabors Drilling USA L.P., 710 F.3d 234, 236 (5th Cir. 2013).

**B.    Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party asserting that a fact is or is not genuinely disputed must support the assertion by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).[28] Summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

"[T]he burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Id. at 2554.  If the movant does so, "the burden shifts to the

---

[28]Summary judgment evidence need not be in admissible form as long as it can be presented in admissible form at trial. Fed. R. Civ. P. 56(c)(2); Maurer v. Independence Town, 870 F.3d 380, 384 (5th Cir. 2017) ("At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form.").

nonmovant to show that a summary judgment should not be granted." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000).

### C.  Contract Formation

"The four elements of a valid contract are:  (1) the parties must possess the capacity to contract; (2) the parties' mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose." Provenza v. Central & Southwest Services, Inc., 775 So.2d 84, 89 (La. App. 2 Cir. 2000).[29]  Mutual consent of the parties is established through offer and acceptance. La. Civ. Code art. 1927. "Louisiana jurisprudence . . . imposes an objective 'meetings of the minds' standard; 'the mere lack of a subjective "meeting of the minds" does not prevent formation of an enforceable contract.'"

---

[29] Plaintiff argues that Louisiana contract law applies. Although the Defendant does not argue for the application of a particular state's contract law, the disputed element — mutual assent — would be required in any applicable jurisdiction.  Under Texas law the elements of contract formation are "that (1) an offer was made; (2) the other party accepted in strict compliance with the terms of the offer; (3) the parties had a meeting of the minds on the essential terms of the contract (mutual assent); (4) each party consented to those terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding."  USAA Texas Lloyds Co. v. Menchaca, 545 S.W.3d 479, 501 n.21 (Tex. 2018).

NOLA Title Co., L.L.C. v. Archon Information Systems, LLC, 360 So.3d 166, 181 (La. App. 4 Cir. 2023).[30] "It is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him." Aquillard v. Auction Management Corp., 908 So.2d 1, 17 (La. 2005). "Once the parties have reduced their agreement to writing 'they are presumed to have selected from prior negotiations only the promises and agreements for which they choose to be bound.'" Jack H. Brown & Co., Inc. v. Toys "R" Us, Inc., 906 F.2d 169, 173 (5th Cir. 1990).

## III. Analysis

Plaintiff argues that the elements for contract formation are satisfied.[31] Defendant argues that the parties never had a "meeting of the minds," in particular regarding the material and structure of the cleanroom ceiling grid.[32] Defendant cites the pre-Subcontract evidence that it communicated its inability to provide

---

[30] "Whether mutual assent exists as to a contract's subject matter and essential terms is an objective inquiry, turning on what the parties said and did, not on their subjective states of mind." Chubb Lloyds Insurance Co. of Texas v. Buster & Cogdell Builders, LLC, 668 S.W.3d 145, 151 (Tex. App.—Houston [1st Dist.] 2023).

[31] See Plaintiff's MSJ, Docket Entry No. 28, pp. 13-15.

[32] Defendant's Response, Docket Entry No. 29, p. 7; id. at 2-4 (reciting negotiations and bid submissions in which Defendant communicated that it could not provide the requested stainless steel ceiling grid and would provide an aluminum alternative).

a stainless steel ceiling grid and its opinion that such a grid would be unsafe.[33] That evidence includes Defendant's alternate bid, which quoted prices for aluminum ceiling components.[34] Based on these communications, Defendant argues that it executed the Subcontract "reasonably believing that the Alternate Bid that [Defendant] had provided to [Plaintiff] . . . was the focus of that Subcontract."[35]

Defendant signed the Subcontract, which defined the scope of work by reference to NASA's original RFQ — not Plaintiff's alternate bid.[36] The law presumes that Defendant read and understood the Subcontract's scope of work. Paragraph 27(i) of the Subcontract states that the Subcontract supersedes the parties' prior understandings.[37] Therefore, regardless of Defendant's subjective belief, there was outward, objective mutual consent (i.e., a meeting of the minds) when the parties signed the Subcontract.

---

[33]Id. at 2-4.

[34]Estimate, Exhibit B to Kalafatis Decl., Docket Entry No. 29-1, p. 21.

[35]Defendant's Response, Docket Entry No. 29, p. 5.

[36]Subcontract, Exhibit A to Petition to Compel Arbitration, Docket Entry No. 1-1, p. 2 (SCOPE OF WORK), p. 13 (signatures); Kalafatis Decl., Exhibit 2 to Defendant's Response, Docket Entry No. 29-1, pp. 6-7 ¶¶ 19-20.

[37]Subcontract, Exhibit A to Petition to Compel Arbitration, Docket Entry No. 1-1, p. 13 ¶ 27(i).

By agreeing to the Subcontract, the parties agreed to the dispute resolution procedures in paragraph 25, including binding arbitration before the AAA in the event executive negotiation and AAA mediation failed. The breach-of-contract claim pending before the AAA is a claim "arising out of, or relating to, the Subcontract" and is therefore within the scope of the arbitration clause.[38] Because the Subcontract contains an arbitration clause and because Plaintiff's claim falls within the scope of the arbitration clause, Plaintiff is entitled to an order compelling Defendant to arbitration. See Klein, 710 F.3d at 236.

Moreover, because the Subcontract was validly formed and because it includes an arbitration clause, Defendant's requests for declaratory judgment necessarily fail.[39]

### IV. Conclusion and Order

Because the parties manifested their mutual consent to the terms of the Subcontract by signing it and because the other elements of contract formation are undisputed, the Subcontract is a validly formed contract. Plaintiff's breach-of-contract claim is within the scope of the Subcontract's arbitration clause, and

---

[38]Subcontract, Exhibit A to Petition to Compel Arbitration, Docket Entry No. 1-1, pp. 11-12 ¶ 25.4.

[39]See Defendant's Crossclaim, Docket Entry No. 17, pp. 10-11 ¶¶ 1-2 (requesting declaratory judgment that Plaintiff "does not have [a] contract with" Defendant and that Plaintiff "has no agreement sufficient to enforce an arbitration or ADR provision").

Defendant has raised no other challenge to enforcement of that clause. The Petition to Compel Arbitration Pursuant to Section 4 of the Federal Arbitration Act (Docket Entry No. 1) and Plaintiff Healtheon, Inc.'s Motion for Summary Judgment (Docket Entry No. 28) are therefore **GRANTED** except as to attorney's fees. Pursuant to 9 U.S.C. § 4, Defendant is **ORDERED** to arbitrate all claims, disputes, and defenses asserted in the pending AAA arbitration (AAA Case No. 01-22-0005-2884) and any other claims or disputes arising out of or relating to the Subcontract. For the same reasons, Defendant and Cross-Claimant Clean Air Solutions, Inc.'s Crossclaim for Declaratory Relief and Judgment Under 28 U.S.C.A. § 2201 (Docket Entry No. 17) is **DENIED**.

Although the Subcontract provides for attorney's fees, Plaintiff has not provided an accounting of its fees incurred in this action. Plaintiff is **ORDERED** to file a motion for attorney's fees by August 23, 2024. Defendant's response must be filed by September 6, 2024, and any reply by Plaintiff must be filed by September 13, 2024.

Section 3 of the Federal Arbitration Act states that "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . [the court] shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . ." 9 U.S.C. § 3; see also Smith v. Spizzirri, 144 S. Ct. 1173, 1176 (2024). The "issue involved in

[this] suit" is not Plaintiff's underlying claim (which is referable to arbitration) but enforcement of the arbitration clause (which the court has now resolved). Therefore after determining attorney's fees, the court will enter a final judgment in this action.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 9th day of August, 2024.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE